UNITED STATES FIDELITY & GUARANTY COMPANY v. AUGUST SIEGMANN.[1]

August 1, 1902.

Nos. 12,963—(126).

### Bond—Intending Witness Signing as Surety.

In an action to recover from an alleged surety upon an indemnity bond, the evidence tended to show that the party sought to be charged as such surety intended to sign the same as a witness, but inadvertently placed his signature thereto under the name of the obligor, instead of in the proper place for a witness to sign. *Held*, between the original parties to the transaction in a suit to charge such alleged surety, that he is not estopped from claiming that he did not execute the instrument as a surety, although no facts were pleaded or proved to show that any fraud had been perpetrated to induce him to sign the bond in that capacity.

### Evidence—Finding.

Evidence considered, and *held* sufficient to sustain the finding of the jury that the signature of a party to an indemnity bond as surety or

[1] Reported in 91 N. W. 473.

co-obligor was in fact placed there as a witness, without any intention to assume the obligation which any other purpose of the signature might indicate upon the instrument.

Appeal by plaintiff from an order of the district court for Hennepin county, McGee, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Cobb & Wheelwright*, for appellant.

*Benjamin Davenport*, for respondent.

LOVELY, J.

Action to recover upon a bond claimed to have been executed by defendant as a surety. The case was tried to the court and a jury. Verdict for defendant. Plaintiff moved for judgment notwithstanding the verdict, or for a new trial in the alternative, which was denied. From this order this appeal brings the record into this court for review.

A careful study of the record inclines us to the conclusion that there is really but one question involved, viz., whether the instrument upon which suit is brought was signed by defendant as a surety or as a witness. This question is under pleadings and testimony which indicate a clear liability on the part of one William Siegmann upon a bond given to the United States Fidelity & Guaranty Company to indemnify that corporation against responsibility incurred in an indemnity bond to the Norwegian Evangelical Lutheran Bethlehem Congregation given to secure the Fidelity Company against loss upon a building contract between such obligor and the church society. See Norwegian E. L. B. Congregation v. United States F. & G. Co., 81 Minn. 32, 83 N. W. 487.

There is no question made here as to the validity of the bond to hold William Siegmann, but this contention is upon the liability solely of August Siegmann, the defendant. The introductory clause, after reciting the consideration and designating the parties to the bond, reads as follows:

"In consideration of the United States Fidelity and Guaranty Company becoming surety on my (William Siegmann's) bond herein applied for, I do hereby covenant and agree to pay the premium or fees hereafter agreed upon, * * * and I do hereby bind

myself * * * to indemnify the said United States Fidelity and Guaranty Company against all loss, costs, damages, * * * resulting from any act, default, or neglect of mine that said United States Fidelity and Guaranty Company may sustain or incur by reason of its having executed said bond."

Then follow references to the bond given by the Fidelity Company to the church society, for the fulfilment by William Siegmann of his building contract. Next in order, and at the end of this obligation, is the attestation clause in this exact form and similitude:

"In testimony whereof, I have hereto set my hand and seal this 28th day of June, 1898.         William Siegmann,   (Seal.)
                                                                    "Contractor.

"A. S. Keyes,
    "Witness.                                  A. Siegmann,
"J. H. Long.                                   2105 So. 8th St."

The evidence in support of the verdict tends to show that defendant went with his son William Siegmann, the contractor, to the office of an agent of the plaintiff, and when there was requested to sign the same as a witness. That he then affixed his signature to the contract, but by mistake, and without misrepresentation or deception being practiced upon him, inadvertently placed his signature under the name of his son instead of in the place where it should have been written as a witness, adding there- to his residence, as appears above, which, under the testimony, was desired by plaintiff's agent for the purpose of reference or location. The question whether this instrument was actually executed by the father, A. Siegmann, as surety for his son, or as a witness, was submitted to the jury under instructions that required it to find that the bond was not signed by defendant as surety before a verdict could be rendered for defendant.

The evidence is quite voluminous, the assignments of error are numerous, but the real question involved was the fact whether, under the instructions to the jury, A. Siegmann, without fraud practiced upon him, signed this instrument as a witness or as a surety; the jury having found in favor of the defendant, and the trial court having approved the verdict, we must accept the

87 M.—12

result, unless the proper legal conclusions make the signature of defendant at the place it was written determinative of the rights of the parties without reference to their intent.

It is contended on the part of the plaintiff that upon these facts the signature of A. Siegmann under that of his son gave such verity to the obligation and fixed his liability so absolutely in law that its apparent effect cannot now be disputed by him, except upon the ground that fraud or deception was practiced to secure it, which was not pleaded or submitted to the jury at the trial.

The bond still being in the hands of the plaintiff, the rights of third parties do not intervene nor are affected thereby; therefore no question of estoppel is involved, and the one simple legal issue is presented whether a mistake in affixing a signature by a person to a written obligation in one place or connection rather than another, contrary to the intent of all parties, imposes an obligation which it was not the purpose of either to incur.

The actual signing of a written instrument, in a legal sense, may embrace more than the clerical act of writing the name. The element of intent may enter into the act,—not the intent merely to place the name on the paper, but to affix it to the instrument in token of an intention to be bound by its conditions; for a signing consists both of the act of writing a person's name and the intention in doing this to execute, authenticate, or, as here, to sign, as a witness. In re Knox's Estate, 131 Pa. St. 230, 18 Atl. 1021.

Upon the verdict we are required to hold that the mistake of defendant was one of fact, and arose either from his ignorance of the proper place to write his name, or haste or inadvertence in writing it in the proper place, without any intention to be bound by it as a surety; and while such instrument is in the hands of the plaintiff, who is not misled or influenced by such mistaken application of the signature, it would be a most palpable injustice to hold the defendant to a liability no one intended he should assume. We must therefore hold that the affixing of the signature of defendant to this instrument for one purpose, understood by the parties, cannot give it a greater value than was actually purposed, and that the true facts to disclose such intention may be shown

by parol, notwithstanding no question of fraud or deception is presented by the pleadings. Polacheck v. Lucas (Wis.) 90 N. W. 175.

Order affirmed.