SUPERIOR GLASS CO. INC. *vs.* EAST GREENWICH SAVINGS FUND AND LOAN ASSOCIATION.

APRIL 7, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J.   This action in assumpsit was brought to recover payment for materials and services supplied by the

plaintiff pursuant to the terms of an alleged contract with the defendant to complete the construction of a building upon which the defendant held a substantial mortgage. The case was tried before a justice of the superor court sitting without a jury, who gave decision for the plaintiff in the amount of $3,120. The case is in this court solely on the defendant's exception to that decision.

It appears from the record that in 1956 Frank E. Gasior, hereinafter referred to as the contractor, was proceeding with the construction of a block of stores on land owned by him in the Wakefield section of the town of South Kingstown. The plaintiff, under a subcontract with the contractor, was engaged in supplying and installing in that building certain glass and metal windows, doors, and fixtures. In August of that year the contractor, in order to finance the project, obtained a construction mortgage from the defendant bank in the amount of $35,000, of which $24,000 was paid over to him upon the execution of the mortgage. It is not disputed that the balance of $11,000 due the contractor under the mortgage was retained by defendant under an agreement that it would be paid to the contractor only when the building was completed to the satisfaction of defendant.

In early August 1956 plaintiff had completed a substantial part of the work covered in its subcontract with the contractor and had received two payments on account, which totaled $4,000. At that time the president of the plaintiff corporation learned that the contractor was having difficulty in arranging sufficient finances to complete the building. It thereupon stopped work under its subcontract and directed its attorney to obtain for it some assurance that it would be paid if it resumed work thereunder.

There is an abundance of uncontradicted testimony which establishes that on and after August 16 counsel for plaintiff, the president of the defendant bank, and the contractor discussed the proposition of whether defendant

would withhold from the $11,000 due the contractor under the mortgage a sum of money sufficient to pay plaintiff if it completed the work contemplated under its subcontract with the contractor. The bank agreed to such an arrangement subject to the condition that authorization therefor would have to be furnished by the contractor in writing. It is not disputed that such authorization was obtained and that counsel for plaintiff was informed thereof.

There is, however, a sharp conflict in the testimony relating to the time when the funds so withheld would be paid to plaintiff. Counsel for plaintiff testified that he had discussed the matter on several occasions with the president of the defendant bank and with the contractor. The substance of his testimony was that the bank president agreed that if authority were given to withhold the money, it would be paid to plaintiff at the time plaintiff completed its work under the subcontract. He further testified that, upon being so informed by defendant's president, he advised plaintiff that defendant would certainly keep its commitments and that work under the subcontract should be resumed. The president of the defendant bank, Walter A. Cook, testified to the contrary. He stated that the agreement was that if authority were given to withhold the money, it would be paid to plaintiff at such time as the building was completed to the satisfaction of defendant's security committee.

It further appears from testimony adduced in behalf of both parties that on August 20 counsel for defendant bank informed counsel for plaintiff that the contractor had given the necessary authority to segregate so much of the money due him under the mortgage as would suffice to pay plaintiff for the completion of its subcontract. The plaintiff's counsel then requested that he be furnished with a letter wherein such agreement was set out, and counsel for defendant prepared such letter after consulting with Mr. Cook, president of the defendant bank, concerning the agreement.

This letter was dated August 21 and was received by plaintiff's counsel August 22. He was informed therein that authority to withhold the necessary funds had been obtained, the pertinent language being as follows: "Mr. Gasior has instructed us to pay over to Superior Glass Company, the balance due them under their contract with Mr. Gasior, when the buildings are completed to the satisfaction of our Security Committee. In accordance with Mr. Gasior's instructions to us we will be pleased to pay over directly to the Superior Glass Company, the balance due them from Mr. Gasior when these buildings are completed." Upon receipt of this letter, counsel for plaintiff called counsel for defendant and told him that the agreement set out in the letter was not the agreement that he had made with Mr. Cook. He was told by counsel for defendant, he testified, that the letter reflected the agreement that the bank had made with plaintiff and that it would do no more. The defendant's counsel, when testifying concerning this letter, stated that he had not been asked by counsel for plaintiff to supply him with a written confirmation of defendant's promise to pay plaintiff when its work was completed and that the letter as written stated the agreement as it was understood by defendant.

In his decision the trial justice held that there was an implied contract under which plaintiff was entitled to recover for the material and labor furnished between August 16, when it resumed work under the subcontract, and August 23, when by the letter of August 21 it was informed that defendant had not agreed to pay plaintiff for such work upon its completion. The defendant, however, contends that the trial justice had already found that there was an express contract between the parties to pay for plaintiff's work when the buildings were completed to defendant's satisfaction. He therefore, defendant argues, found an implied contract covering the same transaction that was the subject of the express contract and was therefore in error.

It is well settled that there can be no implied contract where there exists an express contract between the parties in reference to the same subject matter. *Cochran* v. *Lorraine Mfg. Co.,* 52 R. I. 17.

We cannot agree, however, with defendant's contention that the trial justice found that an express contract had been made by the parties. In his decision as it appears in the transcript, the trial justice did state that in his opinion it was improbable that the president of the defendant bank would promise to pay this plaintiff for its work upon the completion thereof from funds in its possession that would not be due to the contractor until the buildings were completed to its satisfaction. As we understand it, the contention of defendant is that the trial justice, by rejecting plaintiff's testimony as to the time when payment would be made under the agreement, was by clear implication finding that there was an express agreement in which the time of payment was as testified to by defendant's witnesses. We have closely scrutinized the decision and find nothing in the language thereof that warrants such a construction. Rather it appears that he found that there was no express contract on the basis of his conclusion that the minds of the parties had never met upon the terms of the contract relating to the time at which plaintiff would be paid for the work which it performed.

We are unable to perceive any lack of clarity in the language of the trial justice concerning the absence of an express contract between these parties, but if in his remarks he failed to make such statement in positive terms, we think that the language in which he stated his conclusion was abundantly clear. "I think I am bound to find here that the president of the bank never intended to make any such promise. I think I am bound to assume, also, that Mr. Adler thought that he had the promise that was binding; and it was not unreasonable for him to think so; and that upon the strength of his belief that he had such a promise, he

directed the plaintiff to go ahead and do the work." Here the trial justice was clearly stating that on the evidence adduced he found no meeting of the minds as to the time when plaintiff would be paid for the work which it had completed under the subcontract and that therefore there was no express contract.

The controlling question here is whether the trial justice's finding that there was no express contract was error. If he did not err in so finding, neither was there error in his decision that the plaintiff could recover on an implied contract under the common counts. The evidence relating to the making of the express contract was in sharp conflict, at least as to the time when payments would be made to the plaintiff. That being so, the case is within our well-settled rule that where the parties submit a case on the facts to a trial justice sitting without a jury, his decision thereon will be given great weight and will not be set aside unless it is clearly wrong or fails to do substantial justice between the parties. *Head* v. *Quigley,* 87 R. I. 66, 138 A.2d 322. In view of the state of the evidence as we have observed it here, we are unable to say that the trial justice was clearly wrong or that his decision did not do substantial justice between the parties.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Adler, Pollock & Sheehan, Sherwood & Clifford, Raymond E. Jordan, Edward A. Lewis,* for plaintiff.

*Budlong, Clough & Lewis, Clinton G. Clough, Wilford S. Budlong,* for defendant.